SALTER, J.
Geoffrey Cole, former husband and respondent in a 2002 circuit court dissolution of marriage proceeding, appeals a 2011 order on the former wife’s amended motion for contempt and other relief. We reverse much of the order in this high- *370 conflict case and remand the matter for further proceedings, should the former wife elect to press on with her claims as a post-judgment modification case (rather than as a motion purportedly enforcing the 2002 mediated marital settlement agreement (MMSA)). We affirm paragraphs 4 and 5 of the order.[1]
The primary issues before the court— the fourth judge to consider the parties’ inability or unwillingness to reach agreement[2] on scheduling, haircuts for their daughter, and other decisions affecting the school-age children — were (1) the former husband’s obligation to provide health insurance for the children and (2) the selection and costs of the children’s “sporting and extracurricular events.”

Health Insurance

Regarding the health insurance, the 2002 MMSA requires the former husband to “provide health insurance coverage for the minor children at his sole expense unless the [former] wife can obtain it through her employment at no cost.” Coverage is to be provided until the children reach age eighteen, and the deductibles and other unreimbursed expenses are to be split equally. The MMSA provided no other particulars regarding the type of plan or terms.
The former husband’s company went out of business, and the former husband enrolled the children in (and paid the premiums for) the “Vista Health Plan,” known as “Healthy Kids.” The former wife challenged the adequacy of this insurance in a motion for contempt in 2009. In October 2009, the trial court directed the former husband to provide a copy of the policy to the court and to authorize the insurer to provide complete information regarding the coverage to the former wife. The court urged “the parties to come to a decision themselves which will be in the best interest of the children, cost effective, and able to provide a reasonable amount of coverage,” but also noted that cost and the former husband’s ability to pay were factors to be considered. The former husband complied by providing the requisite authorizations and a copy of the plan, but the former wife criticized the plan as inadequate and as one which was not acceptable to the children’s health care providers.[3]
Thereafter, the former wife renewed her motion for contempt relating to the health insurance and the issue was heard again in January 2011. The trial court found that the policy “amounts to Medicare which the Court finds inadequate.” The court then ordered the former husband to pay $220 per month of a total cost of $802.46 per month for a PPO health plan comparable to the former wife’s own coverage. Although the trial court concluded that this was equitable, the order contains no coverage-by-coverage comparison of the insurance originally provided by the former husband under the MMSA with either the Healthy Kids coverage or the PPO plan coverage proposed by the wife, no “net out of pocket” comparison, and no current financial affidavits from which the court could assess the former husband’s ability *371 to pay his share of the new obligation. It cannot be said from this record that the former husband failed to provide medical coverage for the children as required by the MMSA. The former husband does need to keep appropriate records to substantiate the prompt reimbursement of his share of necessary medical expenses paid for the children by the former wife, as required by the MMSA and later orders.
We have repeatedly held that a court-approved marital settlement agreement is nothing more or less than a contract, and we will not rewrite terms that are clear and unambiguous. Schmachtenberg v. Schmachtenberg, 34 So.3d 28, 32-33 (Fla. 3d DCA 2010). The MMSA simply did not identify particular attributes among the array of health insurance plans, deductibles, ceilings, and provider lists (among other variables).

Children’s Activities

The MMSA and final judgment dissolving the marriage became effective when the children were six and three years of age. The former wife’s amended motion for contempt addresses expenses for equestrian, gymnastics, and tennis lessons, camps, and competitions that increased exponentially as the children entered middle and high school. A family division judge assigned to the case and addressing those expenses in earlier years directed the parties to establish a procedure for clearing the scheduling and costs to be incurred for these activities. The record does not reflect that this was done.
Plainly, the expenses of 2009-11 were not addressed in the MMSA. The former wife’s motions seek direct enforcement of obligations that were never imposed in a modification or written stipulation. In a written provision of the MMSA particularly appropriate for these parties, they agreed that no modification of any of the terms of the MMSA “shall be valid unless it is in writing and executed with the same formality as this agreement.”[4] They further agreed:
19. VOLUNTARY PAYMENTS: Any payments made by either party to the other or any payment made by either of them on behalf of the children, at any time, for their benefit, support or education, in excess of the amounts herein specified shall not alter the legal obligation of the Father hereunder nor create any precedent for the future. The mere voluntary excess payments shall not be construed as proof or indication of the ability to make excess payments, nor of the need therefor.
Trial judges hearing earlier phases of the former wife’s motions regarding these expenses ruled that neither party would be liable for the children’s extracurricular expenses unless that party had consented in writing in advance to be responsible for that fee. The record does not contain written consents supporting the costs imposed in the order under review. The record also does not contain financial affidavits sufficient to support the allocation of the expenses between the parties as proposed by the former wife and ordered by the court, or a determination that the expenditures are necessary and in the best interest of the children.
The amended motion for contempt was premature in the sense that these post-MMSA additional, increased obligations were required to be addressed in a motion for modification before any enforcement action relating to the obligations could be commenced. See § 61.13(1)(a)2., Fla. Stat. (2011); Overbey v. Overbey, 698 So.2d 811, 813 (Fla.1997). When former spouses are unable to work out the financial arrange *372 ments for expenses that have substantially-increased in amount and kind from those delineated in the child support provisions of the original settlement agreement and decree, the prospects for miscommunication are obvious. In this case, the former wife sought enforcement of such “creeping obligations” (including motions for contempt) without first observing the formalities for such undertakings as set forth in the MMSA itself.

Conclusion

Although the trial court withheld the imposition of any “specific penalty,” it granted the former wife’s amended motion for contempt. That portion of the order is reversed, as detailed above. In the event that the former wife wishes to seek modification of the 2002 MMSA provisions pertaining to health insurance and to the children’s extracurricular activities on the grounds that the parties’ circumstances and the children’s needs have substantially changed, she may do so by seeking post-judgment modification under section 61.18. In the event the former wife seeks to enforce specific defaults in reimbursements for the children’s medical and dental care under the existing MMSA, or for previously-approved (in writing) extracurricular activity expenses, the enforcement motion should provide the particulars, including dates, written consent to the activity, amounts unpaid, and a copy of the written or emailed request for payment. Conclusory allegations about a “myriad of non-compliances” do not assist the trial court or this Court in resolving the parties’ disputes.
The provisions of paragraphs 4 and 5 of the order entered April 4, 2011, are affirmed; in all other respects the order is reversed and the case is remanded for further proceedings.
Affirmed in part, reversed and remanded in part.

. Paragraph 4 obligates each party to respect the other's privacy. Paragraph 5 approves certain stipulated modifications to the visitation and parenting provisions in the 2002 MMSA.

. A licensed, experienced parenting coordinator did her best to reason with the former spouses, as did each circuit judge to consider the numerous motions filed by them, apparently to little or no avail.

.The former wife testified later, however, that the children’s pediatrician does not accept any medical insurance, requiring the parties to pay when services are rendered and to seek any available reimbursement later.

. The MMSA was signed, witnessed, and notarized by each party.